WILLIAM A. FREEMAN v. JOHN ROBINSON AND WILLIAM S. SMALLEY.

1. No action can be maintained against a father for goods purchased on his credit by a minor child, even for necessaries, unless the father has expressly or impliedly authorized the purchase on his credit.
2. The mere moral obligation of a parent to maintain his child, affords no legal inference of a promise to pay a debt contracted by the latter even for necessaries.
3. A mere moral obligation or duty as an executed consideration, is not a sufficient consideration to support a subsequent express promise.
4. Goods having been sold to a minor child of the defendant on his credit, without his knowledge, order or consent—*Held*, that a subsequent promise by the defendant to pay was invalid for want of a legal consideration.

Action was brought before the First District Court of the city of Newark to recover for goods sold by the plaintiffs to a minor child of defendant, upon defendant's credit. The cause was tried before a jury. The plaintiffs proved their books of account, showing the entries against the father for the son. It was proved that the goods were sold by the plaintiffs without the order, knowledge or consent of the defendant. The jury found a verdict for plaintiffs, upon which judgment was entered.

The defendant being dissatisfied with the direction of the judge in point of law, appealed to the Court of Common Pleas, which court affirmed the judgment. Thereupon the defendant below sued out a writ of *certiorari*.

On *certiorari* of the Essex Common Pleas.

Argued at February Term, 1876, before Justices DEPUE, KNAPP and DIXON.

For the plaintiffs in *certiorari, C. E. Hill*.

Contra, *A. Struble*.

The opinion of the court was delivered by

DEPUE, J.   The duty of a father to provide maintenance for his children is a mere moral obligation. Except in cases within the statute of Elizabeth, and by the procedure there pointed out, he is not legally compellable to perform this duty.

No action can be maintained against a father for goods purchased on his credit by his minor child, even though they be necessaries, unless the father has expressly or impliedly authorized the purchase on his credit. The authority of an infant to bind the father by contract for necessaries may be inferred from slight evidence. But, nevertheless, where the parent gives no authority, and enters into no contract, he is no more liable to pay a debt contracted by his child even for

necessaries, than a mere stranger would be. 1 *Parsons on Contracts* 299; 1 *Chitty on Contracts* 210; *Mortimore* v. *Wright*, 6 *M. & W.* 482; *Raymond* v. *Loyl*, 10 *Barb.* 489; *Plotts* v. *Roseberry*, 4 *Dutcher* 146. The mere moral obligation of a parent to maintain his child affords no legal inference of a promise to pay a debt contracted by him even for necessaries. *Shelton* v. *Springett*, 11 *C. B.* 452.

The case shows that the goods were sold by the plaintiffs to the defendant's son without the order, knowledge or consent of the father. The judgment therefore cannot be sustained on the ground of the agency of the son in making the contract in his father's name.

The judgment was sought to be sustained upon a promise by the father to pay, made after the goods were furnished. There was testimony tending to show that the defendant, after the goods were sold, had promised to settle the bill, or see it settled. The judge charged the jury, "that if they believed that the defendant did promise to settle or pay the bill, the obligation of the parent to provide for the minor child was a sufficient consideration for the promise, and would bind him."

There was no proof that the goods sold were such as were proper to be provided for the maintenance of the son, having regard to the estate and social position of his father, or were indispensable to his life or bodily comfort. The moral obligation of a parent to provide for his children must have some limit. It is not so far-reaching in its operation as to impose a duty on the parent to provide everything which the taste or extravagance of the child may prompt him to desire, or tradesmen may see fit to provide. The obligation is limited to the furnishing of such articles as are necessary to the maintenance and support, leaving to the parent, in virtue of his parental authority, a discretion how far he may deem it prudent to exercise his generosity in the indulgence of his child. The case fails to show the existence of any moral duty on the part of the defendant towards his son, which would require

him to supply the goods sued for. As the plaintiff was bound to make out his case by proof of a consideration which would support the promise, as well as the promise, the cause of action in this respect was not established.

But the charge was intended to present the question whether a moral duty without any legal obligation is a sufficent consideration to give validity to a subsequent express promise.

In *Hawkes* v. *Saunders, Cowp*. 290, Lord Mansfield said that " where a man is under a moral obligation, which no court of equity or law can enforce, and promises, the honesty and rectitude of the thing is a consideration." And Justice Buller declared the true rule to be that " wherever a defendant is under moral obligation, or is liable in conscience and equity to pay, that is a sufficient consideration." The influence of these great names induced the opinion, which at one time prevailed, that a mere moral obligation, under all circumstances, was a sufficient consideration for an express promise. Subsequent examination of this doctrine, in the light of legal principles, has led to a modification of this opinion, and a repudiation of the principle in its generality of application.

In an elaborate note to *Wennall* v. *Adney, 3 B. & P.* 247, the earlier cases, including *Hawkes* v. *Saunders*, are collected and subjected to a critical and discriminating examination. It is there observed, that Lord Mansfield " used the term moral obligation not as expressive of any vague and undefined claim arising from nearness of relationship, but of those imperative duties which would be enforceable by law, were it not for some positive rule, which, with a view to general benefit, exempts the party in that instance from legal liability." The justice of this observation is apparent from the cases stated by the Chief Justice as illustrations of the application of the doctrine. He enumerates promises to pay debts, the recovery of which is barred by the statute of limitations—a promise by a man after he becomes of age to pay a just debt contracted during minority, but not for necessaries ; a promise by a bankrupt after his certificate to pay his debts in full ; and a promise

to perform a secret trust, or a trust void for want of writing by the statute of frauds. In each of these instances there was, originally, a consideration of benefit to the promisor, from which a promise would have been implied capable of legal enforcement, if some statutory provision or positive rule of law had not debarred the party from legal remedy. Indeed, in the case then in hand, which was an action on a promise by an executrix, into whose hands assets had come, more than sufficient to pay debts and legacies, to pay the plaintiff his legacy, the defendant had received a consideration with respect to which a remedy might have been had by action, were it not for a technical rule of law.

In the note above referred to, the conclusion is arrived at from an examination of all the cases, that "an express promise can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision."

The principle thus enunciated was approved by Lord Denman in *Eastwood* v. *Kenyon*, 11 *A. & E.* 438, and adopted by the judges of the Queen's Bench in *Beaumont* v. *Reeve*, 8 *Q. B.* 486, and may now be considered as the settled law in the English courts. It has also been approved and made the basis of judicial decision quite generally by the courts in this country. *Smith* v. *Ware*, 13 *Johns.* 258 ; *Ehle* v. *Judson*, 25 *Wend.* 97; *Geer* v. *Archer*, 2 *Barb.* 420 ; *Mills* v. *Wyman*, 3 *Pick.* 207 ; *Dodge* v. *Adams*, 19 *Pick.* 429 ; *Wheaton* v. *Wilmarth*, 13 *Metc.* 422 ; *Cook* v. *Bradley*, 7 *Conn.* 57. In *Mills* v. *Wyman* the promise sued on was by a father to pay expenses which had been incurred in relieving his son, of full age, who had been suddenly taken sick among strangers. And in *Cook* v. *Bradley* the action was on a promise by a son, who was in affluent circumstances, to pay for necessaries which had previously been furnished to his father, who was

indigent, and in need of relief. In both cases the moral duty was recognized, but was held not to be a sufficient consideration to give validity to a subsequent promise. In *Dodge* v. *Adams* the moral obligation of a father to support his children was directly held not to be a sufficient consideration for a subsequent promise to pay for the board of his minor children, who had been taken from his house without his consent.

In *Briggs* v. *Sutton, Spencer* 582, Carpenter, J., gives his unqualified approbation to the rule above extracted from the note to *Wennall* v. *Adney*, and it may now be considered as the settled law, established on principle and authority, that a mere moral obligation, or duty as an executed consideration, is not a sufficient consideration to support a subsequent express promise. If services be rendered, at the request of the promisor, which are for the benefit of a third party, towards whom the promisor owes only moral duties, they may be recovered for. In such cases, the precedent request and services rendered in compliance therewith, afford a consideration from which a promise to pay would be implied, or such as is needed to uphold an express promise. But where the duty is one of moral obligation only, and the service is rendered without a previous request, a subsequent promise to pay is without the consideration which is necessary to the validity of a contract.

The cases are collected and commented on in 1 *Chitty on Contracts*, 11 *Am. ed.* 52–60; 1 *Smith's Leading Cases* 268, note to *Lampleight* v. *Brathwait*; and in 1 *Parsons on Contracts* 432.

The judgment should be reversed.