## JACOB LEUPPIE

*v.*

## THE EXECUTORS OF ALLAN OSBORN, deceased.

1. When a husband deserts or abandons his wife, without making provision for her support, and a third person advances money to her, which she uses to obtain necessaries, an equitable debt is thereby created, which the person making the advance may enforce by suit in equity.

2. In such a case it can make no difference to the husband whether he is held liable for money or for the price of necessaries, so long as no recovery can be had for money, unless it is shown that it has actually been spent for necessaries.

3. This rule rests entirely on the fault of the husband, and cannot be applied to a case where the husband's failure in duty is the result of misfortune.

---

On motion to dismiss bill.

*Mr. Halsted H. Wainwright,* for the motion.

*Mr. Frank Durand,* for the complainant.

VAN FLEET, V. C.

The object of this suit is to establish an equitable debt and enforce its payment. The complainant rests his right to the relief he asks on the following facts: Allan Osborn died in March, 1893, leaving a will which has been admitted to probate, and by which he directs that all his just debts should be paid as soon as could be conveniently done after his death. For several weeks prior to his death, Mr. Osborn was so weak and helpless that he was unable to sign his name or to give any attention to any business. Before becoming so, he was always possessed of ready money and provided well for his family, and it was his custom to pay cash for his family supplies. A short time prior to his death, the funds which he had placed in the hands of his wife, became exhausted, and he being unable, in consequence of his helplessness and sickness, to provide additional means, and his wife, being in need of money for the support of his family, applied to the complainant for a loan of $100 to be expended for that purpose. The loan was made and the money was expended in the purchase of such things as were necessary for the support of Mr. Osborn's family. Since Mr. Osborn's death the complainant has requested the executors of his will to pay him, and they have refused. This suit is brought to compel payment. The defendants move the dismissal of the bill, on the ground that the case made by it does not entitle the complainant to relief.

The complainant contends that, as the money which he loaned to the testator's wife was spent for the support of the testator's family, he has a right, according to a well-settled rule of equity jurisprudence, to be subrogated to the rights of those who provided the necessaries, and to have his debt enforced in equity against the testator's estate as they might have done at law, if the money which he loaned had not been used to pay for them. In England it is settled by authority, both ancient and modern, that when a husband has deserted his wife without making provision for her support, and a third person advances money to her which she uses to obtain necessaries, an equitable debt is thereby created which may be enforced against the husband.

Leuppie v. Osborn.

The first reported case in which this principle was laid down is *Harris* v. *Lee, 1 P. Wms. 482,* decided in 1718. There a husband had twice given his wife " the foul distemper," in consequence of which she left him and went to London to be cured. Before going, she borrowed money to pay doctors and for necessaries. The husband subsequently died, leaving a will by which he devised land to trustees for the payment of his debts. On a bill by the person who made the loan, it was held that he was entitled to recover. Sir Joseph Jekyll, master of the rolls, in deciding the case, said : "Admitting the wife cannot at law borrow money, though for necessaries, so as to bind the husband, yet this money being applied to the use of the wife for her cure and for necessaries, the plaintiff that lent this money must in equity stand in the place of the persons who found and provided such necessaries for the wife." Lord Campbell, in the subsequent case of *Jenner* v. *Morris, 3 De G., F. & J. 45, 52,* in trying to give the reason why equity, in such a case, subrogated the lender to the rights of the persons who provided the necessaries, said : " It may possibly be that equity considers that the tradespeople have, for valuable consideration, assigned to the party who advanced the money the legal debt which would be due to them from the husband on furnishing the necessaries." So far as the reports show, no attempt was made to enforce the principle established by *Harris* v. *Lee,* from 1718, when that case was decided, until 1849, when the case of *May* v. *Skey, 16 Sim. 588,* arose. In the case last named, it appeared that a husband had gone abroad and left his wife wholly unprovided for, and that the plaintiff, during the husband's absence, had lent his wife money, which she had used to obtain necessaries. Vice-Chancellor Shadwell, in deciding it, distinguished it from *Harris* v. *Lee,* remarking that in *Harris* v. *Lee* there were trusts for the payment of the husband's debts, and that it was that which gave the court jurisdiction. And then added : " In this case there is no trust to execute, but the plaintiff sues merely as a creditor of the husband, and as a mere creditor he has no equity against the husband." The view of the vice-chancellor seems to have been that, in a case where there was no trust or other

ground of equity cognizance, the question whether the plaintiff is or is not a creditor of the husband must be determined by a court of law.

*Jenner* v. *Morris* was decided by Vice-Chancellor Kindersley in 1860 (*1 Drew. & S. 218*), and on appeal by Lord Campbell and Lord-Justice Turner in 1861. *3 De G., F. & J. 45.* In this case it appeared that a husband had deserted his wife without making any provision for her and without making any imputation of misconduct against her. After the desertion the wife's brother advanced money to her, which she used to obtain necessaries, and he also paid for necessaries supplied to her by tradesmen. On the question whether or not, under these facts, the husband was liable, no doubt seems to have been entertained. *Harris* v. *Lee* was affirmed and followed, and *May* v. *Skey* over-ruled. In answer to an objection made by counsel, that *Harris* v. *Lee* was a very old case and did not appear to have been acted upon in modern times, Lord-Justice Turner remarked, in considering old authorities, it must be borne in mind that the decrees of the court very often furnish the very best evidence which can be had of the extent of its jurisdiction and of the principles by which it is guided, and that in disregarding the older decisions there is great danger of breaking in upon its principles. *Deare* v. *Soutten, L. R. 9 Eq. Cas. 151*, was decided by Lord Romilly, master of the rolls, in 1869. In this, as in all the other cases where the husband was adjudged liable, it appeared that the defendant had deserted his wife, leaving her unprovided for, and that the plaintiff had advanced money to her which she had used to obtain necessaries. On the authority of *Jenner* v. *Morris*, the husband was held liable.

The principle established by *Harris* v. *Lee* was recognized by the supreme court of Pennsylvania, in *Walker* v. *Simpson, 7 Watts & S. 83*, and the supreme court of Connecticut, in *Kenyon* v. *Farris, 47 Conn. 510*, after a thorough examination of all the authorities, adopted it as an unquestionably sound rule of equity jurisprudence. The reasoning of the court in this last case appears to me to be more convincing than that advanced in any of the prior cases. Stated in substance it is to this effect, that it can make no difference to the husband, whether he is held

liable for money or for the price of necessaries, so long as no recovery for money can be had, unless it is shown that it has actually been spent for necessaries ; that whether the wife obtains what she is entitled to by one means or the other, the law will discharge its whole duty to the husband by protecting him from liability for anything beyond necessaries, but it cannot discharge its duty to her unless it compels him to support her. If he has a choice as to the method in which he will extend support, the law will let him exercise it, but if he refuses to make a choice and does not provide for her in any way, then she should have a right to resort to any means which will give her what she needs. Besides, it is not certain that the husband's credit will at all times give his wife what she is entitled to—circumstances may arise when nothing but ready money will enable her to get what he is bound to furnish. This reasoning seems to me to be unanswerable.

By force of the principle under consideration, it is manifest that the husband's liability rests not on his misfortune, but on his fault—on his refusal or failure to do his duty to his wife. It has no other foundation. It is only in cases where he has deserted or abandoned his wife, without making provision for her support, that he has been held liable for money advanced. That is the utmost extent to which his liability, by force of this principle, has as yet been carried. The bill shows that when the loan in this case was made, the defendants' testator was un- conscious or in a state of complete disability. He was so sick, weak and helpless as to be incapable of doing any business of any kind. Now, unless pure misfortune, unmixed with fault of any kind, confers authority upon a wife to pledge the credit of her husband for money to buy necessaries, the wife's act in this case was wholly unauthorized and imposed no liability on her husband. To hold a husband liable under such circum- stances will unquestionably obliterate all distinction, in cases of this character, between fault and misfortune, and extend the principle under consideration to cases entirely foreign to both its letter and its spirit.

The bill must be dismissed, with costs.