In the matter of the application of JOHN J. GANEY and MARY A. GANEY for an allowance from the estate of Catherine A. Donahue, lunatic.

[Decided December 21st, 1921.]

1. That exceptions by a lunatic's guardian to the report of a special master allowing a claim against a lunatic's estate, were not specific, is immaterial, as the lunatic is a ward of this court, and therefore this court will determine the broad question whether or not her estate should be charged with the payment of the claim.

2. Under *Supp. Comp. Stat. p. 798 § 7*, the value of services rendered for the care of the lunatic's child cannot be recovered.

3. In proceedings under the same statute application should be made to the court before charging the lunatic's estate with a claim for household expenses, in order that it may be determined whether she has a household, and, if so, how much should be expended for the support thereof.

4. Under the same statute, the estate of a lunatic confined in an asylum cannot be charged with money expended for maintaining her minor daughter elsewhere than in her own home by other than members of her own family, the duty of supporting the child being on the father, with whom she lived at the claimant's home until he died, after which the lunatic had no "household" which is an organized family or domestic establishment consisting of all those who share in the privileges and duties of a common dwelling; but under *2 Comp. Stat. pp. 2791, 2792 §§ 47D, 47L, 47M*, a portion of a lunatic's estate may be applied, under order of this court, to the support of members of her family.

5. One furnishing necessaries, such as food and lodging, to a lunatic, may recover therefor, though the lunatic cannot bind herself by contract.

6. Though it is the duty of a father to support and maintain his minor child, and on his death such duty devolves on the mother, a parent cannot be compelled to support such child except in the manner pointed out in *2 Comp. Stat. p. 1931 et seq.*, and *Supp. Comp. Stat. pp. 1178, 1180 §§ 15, 24.*

7. No action can be maintained against a parent for necessaries furnished his minor child unless he has expressly or impliedly authorized the purchase thereof on his credit, though such authority may be inferred on slight evidence. The father's obligation to support his child affords no legal inference of a promise to pay for necessaries.

8. Expenditures for necessaries furnished a minor child of an insane mother by persons with whom the child was living at her father's death, and who volunteered to care for her for humane reasons, cannot be recovered from the mother's estate, as the duty of supporting the child was in the father before and after the mother was adjudged a lunatic, so that there was no continuing liability on her part from which an implied contract could be inferred, and she was incapable of entering into an express contract. This court, on proper application before the support was furnished, might have directed the lunatic's guardian to pay from her income an annual sum toward the support of the child under the rule that the court will do that which it is reasonable to believe the lunatic would do if she could.

On exceptions to special master's report.

*Mr. Charlton A. Reed,* for the guardian exceptant.

*Mr. Milton M. Unger,* for the petitioners-respondents.

FIELDER, V. C.

John J. Donahue died February 4th, 1916, leaving him surviving his widow, Catherine A. Donahue, and one child, Blanche then fourteen years of age. The widow had been adjudged a lunatic in 1913, and was thereupon committed to a county asylum, and subsequently transferred to the state asylum at Morris Plains, where she still is. For a month or two immediately preceding Donahue's death, he and his daughter lived with his sister, Mrs. John J. Ganey and her husband, paying them no board for the girl, and upon his death he left no real estate and practically no personal property. After her father's death Blanche continued to reside with Mr. and Mrs. Ganey. They were her sole support and they provided her with a good home, clothed and cared for her and treated her as though she were their own child, not by reason of any request from her parents, but because she was their niece and they were fond of her, although they expected that some time they might be recompensed

from her mother's estate for their expenditures on behalf of the girl.

Catherine A. Donahue owned certain real property which was sold some time in the present year under an order of this court, and the net proceeds of sale, about $5,800, came to the hands of her guardian, who has invested the same, and the income accruing is insufficient to pay the lunatic's support, which is at the rate of one dollar per day, at the state asylum.

Mr. and Mrs. Ganey cared for Blanche in the manner above stated from February 5th, 1916, to August 3d, 1917, from which latter date the girl has supported herself. After the sale of the lunatic's real property, Mr. and Mrs. Ganey filed a petition in this court praying that the guardian of the lunatic be directed to pay them, from the lunatic's estate, the money laid out by them for clothing and other necessaries for Blanche and a reasonable sum for her care, support and maintenance for the period aforesaid. The matter was referred to a special master who reported that the expenditures in question amount to $116.60, and that a reasonable sum for board, care, support and maintenance is at the rate of $10 per week for seventy-eight weeks, and that a total of $896.60 is due petitioners and is a proper charge against the lunatic's estate and should be adjudged a debt owing by the lunatic and as advances made on her account and services rendered for her and her estate and for the support of her household. It appears that there are no other claims against the lunatic's estate; that she is about forty-three years of age and upon her death Blanche will be entitled to what remains of her estate. Blanche, now twenty years of age, testified before the special master that she understands that if the petitioner's claim is allowed, there will be less estate coming to her on her mother's death, but that, nevertheless, she considers the claim fair and just and approves of its payment. Exceptions, which are argumentative rather than definite, were filed to the special master's report by the guardian of the lunatic. The fact that the exceptions are not specific is immaterial, because the lunatic is a ward of this court and I shall therefore determine the broad question whether or not her estate should be charged with the payment of the petitioners' claim.

The petitioners rely upon the provisions of *Supp. Comp. Stat. p. 798 § 7*, which provides (a) that if the lunatic is justly indebted to any person, or (b) if any person shall have advanced moneys, purchased necessaries or rendered services on account of the lunatic, for her care, support or maintenance, or for the preservation or benefit of her estate, beyond the ability of the lunatic to pay the same out of the income of her estate, or (c) in case the income of the lunatic shall be insufficient for her support and comfortable maintenance and that of her household, if any she shall have, the chancellor, after investigation of the situation and circumstances of the lunatic's estate and of (a) the just debts owing by her and (b) of the advances that may have been made on her account and of the services rendered for her, may order from time to time the guardian of the lunatic to sell such parts of her lands, or use so much of her estate already reduced to money, as the chancellor shall judge sufficient to pay (a) her just debts (b), the advances above mentioned and (c) proper and necessary for her support and maintenance and for the support of her household, if any she have.

The petitioners cannot maintain their claim under "b," because, thereunder, the moneys must have been advanced, the necessaries purchased or the services rendered for the care, support or maintenance of the lunatic herself, or for the preservation or benefit of her estate. Neither can they succeed under "c," because, thereunder, it must be made to appear that the lunatic had a household (which included her daughter) which should be supported by her estate. In my opinion, the proper procedure contemplated by the clause of the statute now under consideration, as well as the usual practice in this court touching expenditures from the income or principal of a lunatic's estate, requires an application to the court before the estate can be charged with a claim for household expenses, in order that it may be determined whether the lunatic has a household for the support of which, in addition to her own support, her estate should be used, and if so, how much of the estate the guardian should be directed to expend for that purpose. But passing that thought, the question is, did the lunatic have a household, for her estate can only be liable to the petitioners under the clause

we are now considering, for moneys expended for the support of her household, "if any she shall have." A household is an organized family; a domestic establishment; a family considered as consisting of all those who share in the privileges and duties of a common dwelling. I think that what the statute upon which the petitioners rely had in view is the case of an incompetent residing in her own home, with members of her family who attend her and whose care and attention are necessary to her comfort and well being and that it does not contemplate the case of an incompetent in custodial care. I do not want to be understood to mean that under no circumstances can a portion of an estate of a lunatic be applied under order of this court to the support of members of the lunatic's family. *Comp. Stat. p. 2791 §§ 47D, 47L, 47M.* Speaking, now, only of the statute under consideration, I think it clear that the lunatic had no household. She had been confined in an asylum more than two years before her husband's death, during which time he and his daughter lived together, and the last month or two of his life they lived with the petitioners. From the birth of the child up to the father's death the duty of supporting her was on the father and not on the mother, and if there was a household, it was always the father's and never the lunatic's. When the father died the lunatic not only had no household, but she had no established home to which she could go, had she been restored to reason. I conclude, therefore, that the lunatic's estate cannot be charged for money expended by petitioners for maintaining the lunatic's daughter on the theory that the lunatic had a household of which the daughter was a member.

It remains to be considered whether the petitioners have established their claim under "*a*." Have they shown that the lunatic is justly indebted to them? One who furnishes necessaries, such as food and lodging, to a lunatic may recover therefor. This is an exception to the general rule that the lunatic cannot bind herself by contract and the lunatic is suable at law for such debts. *Van Horn v. Hann, 39 N. J. Law 207; Hurey v. Leavitt, 93 N. J. Law 299.* But can a lunatic be bound by contract, express or implied, to pay for necessaries furnished to her minor child?

The duties of parents to their children rest equally on both. Both parents being alive, it is the duty of the father to support and maintain the minor child, and upon his death that duty devolves upon the mother (*Osborn* v. *Allen, 26 N. J. Law 388; Alling* v. *Alling, 52 N. J. Eq. 92*), but this court has no jurisdiction to compel a parent to support an infant child. *Alling* v. *Alling, supra.* Neither parent is legally compellable to perform such duty, except in the manner pointed out by the statute. *Comp. Stat. p. 1931 § 17 et seq.; Supp. Comp. Stat. p. 1178 § 15; Supp. Comp. Stat. p. 1180 § 24.* There is no statute under which the parent is liable to one who may take the parent's place and perform the parental obligation and no action can be maintained against a father (or mother) for necessaries furnished his minor child, unless the parent has expressly or impliedly authorized the purchase or expenditure on his credit, and while the authority may be inferred from slight evidence, yet where the father gives no authority and enters into no contract, he is not liable. The obligation of a father to maintain his child affords no legal inference of a promise to pay for necessaries. *Freeman.* v. *Robinson, 38 N. J. Law 383.* In the instant case, there certainly was no express authority given to the petitioners by the lunatic to support, maintain and clothe the girl. Before and after the mother was adjudged a lunatic, the duty of supporting the child was on the father; so it cannot be said that there was a continuing liability on the mother's part, from which an implied contract can be inferred. At her father's death the girl was living with the petitioners and they volunteered to keep her and care for her for humane reasons. Because the mother was not mentally capable of knowing and consenting to what the petitioners proposed to do, I cannot perceive how she could enter into an express contract to pay them therefor, and if she could not enter into an express contract, none can be presumed against her. It may be that under the statutes cited above, or under other statutes, had proper application been made before the support was furnished, this court would have directed the guardian of the lunatic to pay from the lunatic's income or principal an annual sum toward the support and maintenance of her child.

under the rule that the court in such a case will do that which it is reasonable to believe the lunatic herself would do if she had the capacity to act (*Potter* v. *Berry, 53 N. J. Eq. 151*), but that is not the situation here. The petitioners must show that the lunatic is indebted to them and such indebtedness must be founded upon an express contract or upon one which the court can imply from the circumstances of the case, and having failed to establish a contract, there is no debt owing by the lunatic to the petitioners and their claim cannot be allowed.

The exceptions to the allowance of the petitioners' claim by the special master are sustained.