Florence Hide Rogers has presented a petition setting forth that she is a sister of Jean Bard Rogers, who is incurably insane, and is now, and for some time past, has been confined in the insane asylum at Prefargier, Switzerland; that on January 14th, 1924, letters of guardianship of Jean Bard Rogers, lunatic, were granted by the Ocean county orphans court to Daisy Florence Rogers, her mother, who has qualified and taken upon herself the duties of such guardianship; that said Jean Bard Rogers is twenty-five years of age, unmarried, without issue, and has no brothers or sisters except petitioner; that said Jean Bard Rogers is possessed of an annual income of $4,000, and that the amount necessary and sufficient for her care, support and maintenance at said asylum is $1,200 annually. The prayer is that *Page 7 
an order may be made directing such guardian to pay over to the petitioner two-thirds of the surplus income of Jean Bard Rogers in such manner as the court may direct, for the support and maintenance of petitioner, Florence Hide Rogers, in accordance with the statute in such case made and provided.
The statute relied upon is a supplement to the act concerning idiots and lunatics. P.L. 1909 p. 313; Comp. Stat. p. 2792 §14m. It provides that whenever any idiot, lunatic or person of unsound mind shall be possessed of or entitled unto real or personal estate, the annual income of which shall be more than sufficient for the proper support and maintenance of such person, and his or her household, and such person shall have a parent or parents, brother or brothers, sister or sisters, of the whole or half blood, who are without adequate means of support and dependent upon the bounty of others, such persons, or any of them, may apply to the court of chancery for a decree or order directing the guardian of such idiot, lunatic or person of unsound mind, to pay over such portion of the surplus income of his or her estate to the person or persons aforesaid, not exceeding two-thirds of such surplus annual income, for their support, maintenance or education, in such manner as the court may direct.
It is observable that there is no allegation in this petition that the petitioner is without adequate means of support and is dependent upon the bounty of others. There being no averment of these jurisdictional facts, the petition will have to be dismissed. Another thing: It is not shown that the mother was appointed guardian after lunacy found by a jury on inquisition. It is suggested that this may be important in a case falling under the act concerning lunatics. Section 14m, supra.
At common law no duty devolved upon a brother or sister to support an indigent brother or sister. It was always the duty of parents to provide for the maintenance of their children, and this is a principle of natural law (1 Bl. Com. 447), in case they are impotent and unable to work through *Page 8 
infancy, disease or accident. Ibid. 449. And it likewise was always the duty of children to support their parents in need.Ibid. 453. This duty devolves upon the father during coverature, and the mother during widowhood. Alling v. Alling,52 N.J. Eq. 92; In re Ganey, 93 N.J. Eq. 389. See, also, In reVieweger, Ibid. 527. Our act for the settlement and relief of the poor (Rev. 1911; Comp. Stat. Supp. p. 1174 § 15) provides that the father and grandfather, mother and grandmother, the children and grandchildren, severally and respectively, of every poor, old, blind, lame and impotent person, or other poor person not able to work, being of sufficient ability, shall, at his, her or their charges and expense, relieve and maintain every such poor person as aforesaid. And Vice-Chancellor Fielder (In reGaney, supra) held that a parent cannot be compelled to support a child except in the manner pointed out by the statute, supra.
It follows, of course, that a child cannot be compelled to support a parent except in the same manner. But our statute has not enacted that brothers and sisters should be compelled to support indigent brothers and sisters, except to the extent and as provided in section 14m of the act concerning lunatics.Supra.
Treating of the provisions of the Poor act, in effect, before the Revision of 1911, Mr. Justice Magie (afterwards chancellor), speaking for the supreme court in Ackerman v. Ackerman,55 N.J. Law 422, held that the relative to be affected by such an order must have reasonable notice and an opportunity to be heard, which notice might be by summons or rule to show cause. Reasonable notice is due process. In re Martin, 86 N.J. Eq. 265,274. It is true that the section of the former act under review in the Ackerman Case provided for such notice, while section 15 of the present act does not so provide. Nevertheless, it is fundamental that in every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding and have an opportunity to make a defense. In re Martin, supra. And a lunatic defends by guardian. In re Martin, supra. This is usually a guardian adlitem appointed by the court, although occasionally the general *Page 9 
guardian is permitted to defend in the case of his ward without special appointment, at least, where his interest is not adverse to that of his word. Webb v. Webb, 2 N.J. Adv. R. 1071
(bottom of p. 1073), and in the case sub judice, the mother is guardian of her daughter, a portion of whose surplus income the petitioner, another daughter, seeks for herself; and while the mother might well be relied upon to defend the estate of the daughter for whom she is guardian, against the application of her other daughter, nevertheless, in the circumstances, she ought not to be required to take sides in such a controversy, and an independent guardian ad litem would have to be appointed for the alleged lunatic, on notice to her, of course (Webb v.Webb, supra), if the case were to proceed. But, for the reason intimated above, the petition must be dismissed.
Now, the common law duty to support, devolved upon one person in favor of another, in exoneration of the public, arose out of natural duty. By statute of 43 Eliz. chap. 2 § 7, it was enacted that a father and grandfather, mother and grandmother, and the children of every poor, old, blind, lame or impotent person, or any other person not able to work, being of sufficient ability, shall, at their own charges, relieve and maintain every such poor person. This statute confines liability to lineal consanguinity in ascending and descending lines (omitting grandchildren), and is the prototype of our New Jersey statute for the settlement and relief of the poor (wherein we include also grandchildren), but which has not extended the duty of support to brothers and sisters who are collateral kindred, whose duty in that behalf is provided, to a certain extent, in the supplement to the act concerning lunatics. Supra.
It may be that the legislature is powerless to take the property of one and bestow it upon a brother or sister, even for the latter's support, as an indigent, although the supreme court of Illinois, in People v. Hill, 163 Ill. 186 (the only case on that question which I have found), held that a statute which compelled a brother to support a pauper sister was not unconstitutional as a deprivation of property without *Page 10 
due process of law. As that question is not before me for decision, I express no opinion with reference to it.
For the reasons given above the application before me must be denied and the petition dismissed.