The bill of complaint alleges that in July, 1917, the defendant abandoned his wife and infant child, who were then living at the home of the complainant, the father of defendant's wife; that the wife was then ill and died a few weeks later; that since that time the defendant's child, who was then six years of age, has continued to live at the home of the complainant, who has supplied said child with board, food, clothing, medicines, medical service, education and all other necessities of life at his own cost and expense; that during said period the defendant, although living in the neighborhood, has contributed nothing toward the support *Page 399 
and education of his said son, has not offered him a home nor made any request of the complainant, nor of anyone else, that his son should live with him, and that defendant has wholly failed and refused to support his said son and to furnish him with the necessities of life. The bill further alleges that the defendant was under a legal duty to support and maintain his said child and that he is indebted to complainant for all the necessaries furnished by him to and for his said child from July 26th, 1917, to date. The bill seeks to recover the reasonable value of said necessaries, which is alleged to be $6,750. There is also a claim for $300 for funeral expenses of the defendant's wife, which complainant claims to have paid and alleges the defendant was under a legal duty to pay.
This motion is made on the ground that the bill discloses no equitable cause of action and that complainant's remedy, if any, is at law. It is conceded by counsel for the complainant that that portion of the bill embracing the claim for moneys expended for funeral expenses is improper and should be stricken; but it is insisted that the balance of the bill presents a case peculiarly for equitable relief because of the inadequacy and deficiency of the machinery of the courts of law, and that the moral obligation of the defendant is so strong that a court of equity should have no hesitancy in granting relief. Complainant relies mainly upon Tomkins v. Tomkins (1858), 11 N.J. Eq. 512,
as authority for maintaining this suit, but cites also in support thereof, Freeman v. Robinson, 38 N.J. Law 383;Leuppie v. Osborn, 52 N.J. Eq. 637, and the unreported case ofRichardson v. Nagle, docket 71, page 642, decided by Vice-Chancellor Fielder on June 17th, 1930; and claims further, that if for no other reason, complainant is entitled to maintain the action on the principle of subrogation to the right of the municipality to recover from the defendant father the cost of maintaining his offspring. This latter argument is to this effect: That under the act for the relief and settlement of the poor the municipality in which this child had its settlement at *Page 400 
the time of its abandonment would have been obliged to support and maintain it had it not been for the intervention of the grandfather, the complainant; but that the primary liability was that of the defendant father, from whom the municipality might have recovered in an action against him for that purpose; that the complainant, instead of the municipality, having assumed the expenses of the support and maintenance of the child, is entitled to be subrogated to the right of the municipality, under like circumstances, to recover from the father.
I am of the opinion that the bill cannot be maintained and that the motion to strike should prevail. Tomkins v. Tomkins,supra, does not support the bill. Complainant quotes in his brief the following language from the opinion of the chancellor:
"A parent is bound to provide his infant children with necessaries; and if he neglects to do so, a third person may supply them, and charge the parent with the amount. But such third person must take notice of what is necessary for the infant, according to his situation in life; and where the infant lives with his parent, and is provided for by him, a person furnishing necessaries cannot charge the parent. `When the infant is sub potestate parentis, there must be a clear and palpable omission of duty, in that respect, on the part of the parent, in order to authorize any other person to act for, and charge the expense to the parent.' If a case can be suggested where the moral obligation of a father to provide for his offspring can be enforced as a legal one, it would be difficult to find one more apposite than this. The complainant left his child, about three or four years of age, with its destitute and heartbroken mother. He abandoned them both to the charities of the world. The mother found shelter in the almshouse. The daughter was forced upon its grandmother, a woman then advanced in life, and of moderate means for her own support. There is no evidence that, for the fifteen years the child was under the care of its grandmother, the father ever made any inquiry as to its whereabouts *Page 401 
or welfare. Now, in view of all these facts, if there was any doubt as to the legal obligation of the father to provide for his child, and of his legal liability to such as should supply that child with the necessaries of life, the moral obligation is so strong that a court of equity would feel but little inclined to grant relief on any such ground as that the moral obligation had been converted into a legal one," and claims that this language exactly fits the facts of the present case. It is true that this language aptly describes the situation presented by the bill of complaint, but that it is not pertinent to the issue will immediately appear from a consideration of the whole opinion and the nature of the case in which it was written. A judicial opinion, like a will, must be read from its four corners, and isolated excerpts therefrom are sometimes quite misleading. In the Tomkins Case the father had abandoned his child and it was supported by the grandmother during her life without any arrangement or agreement with the father respecting such support. After the grandmother's death, her executor issued a writ of attachment against the father, who was a non-resident, to recover the cost and expense of the support of the child. Judgment by default was entered in the cause in due course and the defendant's interest in his mother's estate was sold to satisfy that judgment. Thereafter, the defendant in that suit filed a bill in this court for an accounting of the proceeds of the sale on the ground that the judgment had been obtained by fraud. Although the court dismissed the bill, stating that it had no right to inquire into the merits of the action at law, it did, nevertheless, discuss those merits. The court recognized that the obligation of the father to support the child was a moral, and not a legal one, and the court's jurisdiction was not questioned. But the suit was not one to enforce the liability, moral or legal, of the father to support his child, but for relief from an alleged fraudulent judgment. No fraud was shown, and the court refused relief. What the court said was arguendo to demonstrate that the complainant was not an object of extreme solicitude *Page 402 
and that the entry of the judgment against him did not shock the court's conscience. Certainly the circumstances were such as to give the court no qualms of conscience in dismissing the bill.
In Freeman v. Robinson, supra, the supreme court held that the mere moral obligation of a parent to maintain his child affords no legal inference of a promise to pay a debt contracted by the latter even for necessaries. The court said: "The duty of a father to provide maintenance for his child is a mere moral obligation." This doctrine has been frequently reiterated by our courts and most recently by the court of errors and appeals (Cockrell v. McKenna, 103 N.J. Law 166 — at p. 170), where the court said:
"It is now well established that a mere moral obligation or conscientious duty arising wholly from ethical motives, or a mere conscientious duty, unconnected with any legal obligation, perfect or imperfect, or with the receipt of benefit by the promissor of a material or pecuniary nature, will not furnish a consideration for an executory promise."
A fortiori, such moral obligation could not furnish the consideration for an implied promise. It has also been repeatedly held that the court of chancery has no jurisdiction to compel a parent to support his infant child. This was decided by Vice-Chancellor Pitney in Alling v. Alling, 52 N.J. Eq. 92.
At page 96, the vice-chancellor said:
"The question of the extent of the duty of a parent to support and maintain an infant child can be raised in this court only when the child has a fortune of its own. This court has no jurisdiction to compel a parent to support an infant child."
To the same effect are the decisions of Vice-Chancellor Fielder, In re Ganey, 93 N.J. Eq. 389, and of Chancellor Walker, In re Vieweger, 93 N.J. Eq. 527. In the Ganey Case
Vice-Chancellor Fielder said:
"Neither parent is legally compellable to perform such duty, except in the manner pointed out by the statute. Comp. Stat. p.1931 § 17 et seq.; Cum. Supp. Comp. Stat. p. 1178 *Page 403 
§ 15; Cum. Supp. Comp. Stat. p. 1180 § 24. There is no statute under which the parent is liable to one who may take the parent's place and perform the parental obligation and no action can be maintained against a father [or mother] for necessaries furnished his minor child, unless the parent has expressly or impliedly authorized the purchase or expenditure on his credit, and while the authority may be inferred from slight evidence, yet where the father gives no authority and enters into no contract, he is not liable. The obligation of a father to maintain his child affords no legal inference of a promise to pay for necessaries."
This decision was affirmed by the court of errors and appeals in 94 N.J. Eq. 502 on the vice-chancellor's opinion. See, also, Chancellor Walker's reference to this opinion, In re Rogers,96 N.J. Eq. 6 (at p. 8).
In Murphy v. Murphy, 102 N.J. Eq. 552 (at p. 554), the court of errors and appeals said:
"It may well be, although we do not so decide, that a husband may be liable, in a common law suit, to unpaid creditors who have supplied necessaries for the support of his minor childrenwhose custody has been awarded to their mother under an alimonyorder for their support, which, under unexpected extraordinary circumstances, has proved insufficient." (Italics mine.)
All these cases, it seems to me, indicate very clearly that this court has no jurisdiction to enforce the alleged liability of a father to support his child, except, of course, in matrimonial causes. If any right of action exists, it is in the law courts.
Leuppie v. Osborn, supra, is not an authority for complainant's bill. There, during the husband's last illness and while he was unable to transact any business for himself, his wife borrowed $100 from the complainant who sought to collect from the executor of the husband after his death. The bill was dismissed on the ground that no implied promise could be raised from the misfortune of the deceased husband. Vice-Chancellor Van Fleet discussed the English rule *Page 404 
and approved of it, but said that it was grounded entirely upon the fault of the husband and not upon his misfortune, and that inasmuch as the loan came about because of the husband's misfortune and not because his fault, no legal obligation arose. Nor is the case of Robinson v. Nagle, supra, applicable. There this court had, in a maintenance suit, ordered the father to pay a certain sum per week for the support of his wife and minor child. A legal obligation arose upon the entry of that order. And so in the supposed case referred to in Murphy v.Murphy, supra, a legal obligation would have existed; but it is significant that the court suggests the remedy, if any, is in the law courts.
As to the complainant's right of subrogation. It is clear that whatever the complainant has done has been as a volunteer and "a volunteer never can claim the benefit of the law of subrogation."Fay v. Fay, 43 N.J. Eq. 438. See, also, Shinn v. Budd,14 N.J. Eq. 234, and Pierson v. Phillips, 85 N.J. Eq. 60. The bill will be stricken. *Page 405