THOMAS W. OSBORN *vs.* CHARLES ALLEN, Administrator of Rebecca Cottrell.

1. The act of 1797, declaring when the death of persons absenting themselves shall be presumed, has not so altered the rule of the common law as to vary the evidence required to support the presumption.

2. Proof that a husband has absented himself from his family, and has not been heard from for sixteen years, is sufficient to raise the presumption that he is dead.

3. A mother who is the head of the family, and whose son, of the age of nineteen years, resides with her and submits to her control, may contract with a third person for his services, and recover for them.

In error to Middlesex Circuit.

An action of debt was brought by Rebecca Cottrell, in her lifetime, before a justice, for the wages of her son, aged about nineteen years, and a judgment rendered for the plaintiff. An appeal having been taken to the Middlesex Pleas, and the action revived after the death of the plaintiff, in the name of her administrator, the case was re-tried, and a new judgment rendered for the plaintiff. A state of the case having been agreed on, containing the evidence of the single witness examined before the pleas, a *certiorari* was sued out of Middlesex Circuit Court, and that court affirmed the judgment of the Pleas.

*Beasley*, for plaintiff in error, insisted on two grounds—

1. There was no legal evidence of the husband's death. It was not proved that he had been absent beyond sea, or absented himself from this state, or concealed himself in this state, as is required by the statute. *Nix. Dig.* 194, § 4. The common law seems to have been more lax (1 *Greenl. Ev.*, § 41); but our statute now affords the only rule, and there must be strict proof of the particular kind of absence prescribed. In cases of polygamy the statute is different. *Nix. Dig.* 163, § 13.

2. A mother has no right to sue for a child's wages; her rights are not the same as those of a father. *Commonwealth* v. *Murray*, 4 *Binn.* 487; *Whipple* v. *Dow*, 2 *Mass.* 415; *Dawes* v. *Howard*, 4 *Mass.* 97; *Pray* v. *Gorham*, 31

*Maine* 240. After the father's death, the guardian will entirely supersede the mother's rights to the control of the child. 7 *Halst.* 97.

*Randolph,* for defendant in error.

1. There was no evidence that there was a husband, or ever had been. The evidence, such as it was, sufficiently proved that he had been absent from this state, or had concealed himself in this state for seven years successively.

2. Mother has a right to sue. *Nightingale* v. *Withington,* 15 *Mass.* 274. It was held in 4 *Littell* 25, that a mother may sue for enticing away child. In *Coon* v. *Moffitt, Penn.* 583, the court held that a mother could recover for the seduction of her daughter. The case of Pray *v.* Gorham merely decides that a mother cannot assign the services of her child by parol; but that, notwithstanding such an assignment, the infant might recover. Our statute (*Nix. Dig.* 22) requires mother to assent to child's indenture.

The CHIEF JUSTICE. This action was commenced in the court for the trial of small causes, by Rebecca Cottrell, against Osborn, the plaintiff in error, to recover compensation for the work and labor of her son, an infant, done and performed for the defendant below, and at his request. On the trial of the appeal before the Middlesex Pleas, a motion made to non-suit the plaintiff was denied by the court. The judgment of the Common Pleas, having been removed by *certiorari* to the Middlesex Circuit, was there affirmed. A reversal is now asked, on the ground that the Court of Common Pleas erred in refusing to non-suit.

The alleged error is twofold. First, it is said that the plaintiff, at the time of bringing the action, was a *feme covert,* there being no legal proof of the death of her husband. The proof was, that the husband had been a long

time absent, and had not been heard from for sixteen years. It is admitted that this evidence would, at the common law, be sufficient to raise the presumption of death. But it is insisted that the act of 1797, declaring when the death of persons absenting themselves shall be presumed, has altered the common law rule, and rendered it necessary to prove one of three alternatives specified in the statute, viz., that the party remains beyond sea, or absents himself from this state, or conceals himself within this state. But it is obvious that this construction of the statute would totally defeat its object. Evidence that the party was actually absenting himself from the state, or was concealing himself within the state, would necessarily prove that he was living, and would, consequently, rebut the very presumption that the statute was designed to create. All the proof that can be required or expected is, that the party has been absent from the state, or from his family or home, and has not been heard from within the period prescribed by the statute. The effect of the statute was simply to define the limits and direct the application of an ancient rule of the common law, which had been adopted and applied by existing English statutes to certain specified cases. *Thorne* v. *Rolff, Dyer* 185 *a ; S. C., Bendloe* 86 ; 1 *Jac.* 1, *c.* 11 ; 19 *Car.* 2, *c.* 6 ; 1 *Phil. & Amos* 468 ; 1 *Greenl. Ev.*, § 41.

The statute may, perhaps, have been further designed to convert a mere presumption of fact into a presumption of law ; for it seems to have been doubted whether, at common law, the presumption of death arising from seven years' absence was obligatory upon juries. But, in this respect, the rule at common law is now held to be as obligatory as that prescribed by the statute. 1 *Phil. & Amos* 468 ; and *note* 1.

The second reason assigned for error is, that an action cannot be maintained by a mother, the father being dead, for the services of a minor child. It appeared in evidence that the minor was a member of his mother's family ; that

for ten years the mother had had the sole charge of the family; that the minor worked out from home, his mother receiving his wages, and that his washing and mending were done at home.

What authority, by the laws of this state, has a mother over her minor children? The right is not regulated by statute. It rests upon the principles of the common law, as modified and moulded by our institutions and construed and applied by our judicial tribunals. Blackstone, in a parenthesis consisting of a single line, has disposed of the subject, by stating that a mother, as such, is entitled to no power, but only to reverence and respect. 1 *Bla. Com.* 453. And this doctrine seems to have been adopted and applied in its fullest extent by some of the American courts. *Commonwealth* v. *Murray*, 4 *Binn.* 487.

A dissent from so high an authority certainly should not be ventured upon without the support of clear principle. But I think it will be found that the proposition is not consistent with the principles of natural law, with the rules of the common law, or with the dictates of sound public policy.

The authority and rights of parents over their children result from their duties. The law of nature acknowledges no other foundation of a parent's right over his children besides his duty toward them. *Paley's Mor. Phil., Book* 3, *ch.* 10. The authority is given them partly to enable the parent to perform his duty, partly as a recompense for his care and trouble in the faithful discharge of it. 1 *Bla. Com.* 452.

The duties of parents to their children, by the law of nature, rest equally upon both. It is the duty alike of each parent to maintain, protect and educate their children. *Puffendorf's Laws of N., Book* 4, *ch.* 11; *Paley's Mor. Phil., Book* 3, *ch.* 9; 1 *Bla. Com.* 446.

If, then, the rights of parents result from their duties, their duties being the same, their rights must be the same also. While the father is living, the authority of the

mother, for obvious reasons, is in abeyance. As the mother herself (says Dr. Paley) owes obedience to the father, her authority must submit to his. In a competition, therefore, of commands, the father is to be obeyed. In case of the death of either, the authority, as well as duty of both parents, devolves upon the survivor. *Mor. Phil., Book 3, ch.* 10.

The extent of this natural authority of parents over children is the subject of municipal regulation, and has greatly varied in different ages and under different systems of laws. It has undoubtedly been greatly modified by the progress of intelligence and refinement, by the diffusion of the benign principles of Christianity, and the consequent elevation of the female sex. The ancient Roman laws gave to the father the power of life and death over his children. 1 *Bla. Com.* 452. The mother had no authority over her children. She could have none, because the Roman laws subjected women, except they were under the cover and authority of a husband, to a perpetual guardianship. *Montesquieu's Sp. of Laws, Book* 7, *ch.* 12.

The great natural duties of parents to their children, maintenance, protection and education, are all recognized at common law, and to some extent enforced by statute. The duties of protection and education are left by our law to rest simply where the law of nature has placed them. It recognizes the duty as belonging to both parents, and the consequent rights and obligations resulting from them are the same. A mother, as well as the father, may maintain and uphold her children in their lawsuits without being guilty of the legal crime of maintaining quarrels. She may justify an assault and battery in defence of the persons of her children. She may maintain an action for the seduction of her daughter. *Coon* v. *Moffet, Penn.* 583.

And in the absence of express authority, I think I hazard nothing in saying that by the well-settled law of this state, a mother is not only authorized, but bound, the

father being dead, to exercise authority over her children. Upon an indictment against her for keeping a disorderly house, it would be no answer for her to say that her daughters were licentious, and her sons profligate, and that she could not govern them. The law imposes upon her the duty of restraining and governing her children ; and to this end it confers upon her the requisite authority. She, as well as the father, may inflict upon her children moderate chastisement. If not, she is indictable for punishing a minor child, however moderate that punishment may be. Such an indictment, it is believed, has never been sustained in this state. In these respects there is no distinction in our law between the authority of the mother and that of the father. It is true that the mother, as such, has during the life of the father no authority. The authority is by the law vested in the father alone ; for if they shared the authority there might be conflicting powers. When the mother exercises family discipline, living the father, the law presumes it to be done by his direction and with his consent. *Reeve's Dom. Rel., ch.* 11. But the father being dead, the right and the duty of government, and the requisite authority for that purpose, devolve upon the mother. Such, we have seen, is the clear principle of natural law, and such we apprehend to be the law of this state : a rule founded not only upon natural law, but resting upon the dictates of public policy, and the true interest of society.

In regard to the *maintenance* of children, the only obligation expressly imposed by law, that of maintaining poor children not able to work, rests alike upon both parents. *Nix. Dig.* 614, § 26 ; 1 *Bla. Com.* 448.

There is, however, this distinction recognized by the authorities between the obligation of the father and that of the mother to maintain their infant children, viz., that the father is bound to maintain his children during their minority, though the children have ample property for their support, while no such obligation rests upon the

mother. And this distinction has been relied on as showing that the mother cannot be entitled to the services of her children. But a satisfactory solution of the distinction may, perhaps, be found in the respective rights of husband and wife in regard to property, and in the distribution of the estate, upon the death of the father, under the rules of the common law.

The control of the mother over the person and services of her infant children is more restricted than that of the father. It cannot be exercised during the life of the father. Her right may be determined by her marriage, or by the appointment of a guardian for his children, either by the will of the father or by authority of law. But, by the law of this state, while she remains unmarried, the mother has a right to the services of a minor child for whom no guardian has been appointed, so long, at least, as the child remains under her protection. Within these limits, the right of the mother to the services of her children is the same as that enjoyed by the father. Such has long been understood to be the well-settled law of this state. It is supported by principle, and sound public policy requires that it should not be disturbed.

The judgment must be affirmed.

ELMER, J. The first error insisted on was, that the plaintiff below should have been non-suited for want of sufficient evidence of her husband's death. But one witness appears to have been examined, who, on his cross-examination, said it was rumored in the neighborhood that the plaintiff was married, and that her husband's name was Nehemiah Cottrell; the reputation was, that he had left her about sixteen years, and had not been seen or heard of since. One of the plaintiff's daughters, since her death, had said they did not know whether Cottrell was dead or living. This was all the evidence that the plaintiff ever had a husband, and really proved nothing. But taking it that she had once had a husband, evidence that he had

been absent from his family sixteen years, and had not been heard of, was ample proof that he had been absent from the state, or had concealed himself in the state for seven years successively, so as to bring the case within the express terms of the statute, and to raise the presumption that he was dead.

*Secondly.* It was insisted that the plaintiff should have been non-suited, on the ground that a mother, as such, has no right to recover for the wages of her son. That a mother's relation to her children is somewhat different from that of the father, is undoubtedly true. During his life, no other person can be appointed their guardian, unless he deserts them, and he has the absolute right to control them and receive their earnings. The mother, in case there is no legal guardian, is guardian for nurture; but this right may be superseded by the appointment of a legal guardian, and after the child arrives to the age of fourteen he may choose whom he will. But our law imposes upon the mother, if of sufficient ability, the duty of supporting her children, (*Nix. Dig.* 614, § 26,) and recognizes her right to be consulted in binding them apprentices. *Nix. Dig.* 22. In the absence of a legal guardian, she has a natural and legal right to control them, and to receive their earnings. In this case it appears that she was the head of the family, and that her son lived with her, and made her house his home when not engaged elsewhere, and while working for defendant, his washing and mending were done by her. She was accustomed to receive his wages, and received them of the witness, who hired him just previous to his working for the defendant. There was no proof that any wages were paid or offered to the son, or that he ever claimed them. Under these circumstances, I think the court, judging of the facts as a jury might if the trial had been before a jury, had a right to infer that the defendant expected to pay the plaintiff, and contracted with her to do so. So long as the son thought proper to remain subject to the con-

Osborn v. Allen.

trol of the mother, and to work for her benefit, he had an undoubted right to do so, and his work and labor for others, actually or virtually at her request, was the same as if she had performed the services with her own hands.

The judgment must be affirmed.

POTTS, J. The action was brought by Rebecca Cottrell against Osborn, before a justice of the peace, for the work and labor of her son Thomas, who was a minor.

The service and its value were proved. The boy was about nineteen; made his home with his mother, who had always had charge of the family; and it did not appear whether his father was living or dead: the evidence was, that he had not been heard from for some sixteen years.

Mrs. Cottrell recovered judgment before the justice. An appeal was taken to Middlesex Pleas, and she having deceased, her administrator was substituted, and recovered judgment on the trial of the appeal; which judgment, on *certiorari*, was affirmed in the Circuit Court.

The counsel for the plaintiff in error now makes two points. 1. That there was no proof of the decease of the father, nor any evidence upon which the legal presumption of his death could be founded. 2. That even if the father was dead, the mother could not maintain this action.

1. As to the first point, the evidence, such as it is, must be taken as part of the case. It was introduced by the plaintiff in error, who was defendant below, by way of cross-examination, and he cannot object to it here. It certainly does not make out a case of presumptive proof of death within the strict words of the statute. *Nix. Dig.* 194, § 4. The witness did not testify that to his knowledge the husband had remained beyond sea, or absented himself from the state, or concealed himself within the state, but he did testify that the mother had had charge of the family for ten years; that he never saw any one

Osborn v. Allen.

else have charge of it; that the boy made his home with the mother; that he had worked for the witness previously, and he had paid the mother for his services; that the reputation of the neighborhood was, that the father had left her about sixteen years ago, and had not been seen scarcely since; and that he had not been heard of for sixteen years, so far as witness knew. A case of absolute desertion, continued for sixteen years without any communication or knowledge of his whereabouts, or information whether he be living or dead, may very safely be taken as sufficient evidence of absence from the state, or concealment in it. It is within the spirit, if not the strict letter of the statute. For the purposes of this case, therefore, the court below had a right to presume the father of the boy was dead.

2. Then can the mother support this action? Upon the maxim *quod non apparet non est*, we are to take it that the boy interposes no objection, and that he has never had a guardian appointed. It would seem from the evidence, that he has been nurtured and brought up from an early age by this mother, who has provided for him a home and a support, and assumed the duties and fulfilled the obligations of both father and mother to him. This being the case, the court below did right in holding that the defence was not maintained. The defendant had the benefit of the service, and was bound to pay for it. And although there is a conflict of authorities as to the strict legal right of the mother to recover in all cases where the father is dead, for work and labor performed by her minor children, yet in a case of this kind it ought not to be denied to her.

The judgment should be affirmed.

VREDENBURGH, J., concurred.