Abele *v.* Abele.

---

ARTHUR C. ABELE

*v.*

MARY A. ABELE.

[Filed December 9th, 1901.]

1. A complainant had been a resident of the state for two years, and defendant, a non-resident, filed a cross-complaint seeking divorce on the ground of desertion. Complainant refused to move a hearing on his bill and it was dismissed.—*Held,* that defendant was not deprived of her right to relief on the cross-bill, one of the parties being a resident.

2. On decree of divorce for a wife of middle age and in good health, and in great part supporting herself, in the absence of any reason showing why permanent alimony should be allowed, an order for the same will not be made.

3. In a decree of divorce at the suit of a wife, there may be an allowance for the maintenance of a minor child by the father.

4. Where, on divorce at the suit of a wife, it appears that there is a minor daughter, and that the father has been content to live without any association with the child for six years, and the character of the wife is not attacked, the wife will be awarded the custody of the child, the father having the right of visitation.

---

On bill and answer. On cross-bill and answer and proofs.

*Mr. Frederick A. Rex,* appeared for Arthur C. Abele, who is complainant in the original bill and defendant in the cross-bill.

*Mr. Henry F. Stockwell* and *Mr. Henry S. Scovel,* appeared for Mary A. Abele, defendant in the original bill and complainant in the cross-bill.

Grey, V. C.

The cause coming on to be heard, the complainant's counsel refused to move the hearing on the original bill. The counsel for defendant thereupon moved that the original bill be dismissed and that the hearing of the cross-bill proceed. Which motion was granted.

Testimony was then offered in support of the allegations of the cross-bill. The witnesses were cross-examined by the counsel for the husband, who is complainant in the original bill and defendant in the cross-bill.

On the conclusion of the evidence the cause was argued by counsel for the parties and the vice-chancellor gave the following opinion:

The Vice-Chancellor—I do not care to hear counsel for the cross-bill in reply, because it seems to me the case made on the proofs justifies a decree for the wife.

The first suggestion made by the defendant in the cross-bill is that Mrs. Abele is a non-resident of this state and that the original bill having been dismissed, she is not justified in applying for affirmative action on her cross-bill under our statute.

If that were so, no cross-bill could be maintained against a complainant resident of this state who had invited a non-resident defendant into court. As he could dismiss his own bill at any time, or refuse to present it, as in this case, it would remain at his option whether or not any relief could be given to a defendant who has a good cause of action on the cross-bill. The resident complainant might experimentally come into court, presenting charges of most disgraceful conduct, as has been done in this case. Being met with denials and counter charges which he knew he could not meet, he could then refuse to proceed on his original bill and object to the defendant having any relief on the cross-bill, because she was not a resident of this state. The complainant in the original bill invited this defendant into court and charged her with the repeated perpetration of the crime of adultery. He invited her to make any defence which could be made to these charges. She was entitled to answer, and to set up in her answer, any defence which might refute his accusations, and to make counter charges against him of any conduct

which might entitle her to a divorce. Her right to insist upon a divorce by way of cross-bill because of his willful, continued and obstinate desertion, cannot be taken away by his attempt to prevent the disclosure of their true relation by abandoning his bill.

The statute is clear, jurisdiction attaches in all cases

"where the complainant or defendant shall be a resident of this state at the time of filing the bill of complaint, and the complainant or defendant shall have been a resident of this state for the term of two years, during which such desertion shall have continued." Divorce act, section 39, *Gen. Stat. p. 1273.*

The undisputed evidence shows that the original complainant, the husband, was a resident of this state at the time of the filing of his bill and at the time of the filing of the cross-bill; that he came to and obtained a *bona fide* residence in the city of Camden more than four years ago; that nearly three years ago he was elected a member of Camden city council, an office which he presently holds. The only remaining jurisdictional fact is whether, during the term of two years preceding the filing of the bill and cross-bill, a statutory desertion has continued. This element I will discuss hereafter, but for the purpose of settling the jurisdictional question I may say now that I find as a fact that a statutory desertion during the period named has been proven.

The result is that jurisdiction in this court attached to hear and determine this cause. This is true whether the husband is classed in the category of complainant, which he was in the original bill, or as defendant, which he is in the cross-bill. The statute gives jurisdiction over him in either capacity. Jurisdiction over the subject-matter having been shown and having been established over the parties in the cause by the procedure, it cannot be defeated by the voluntary refusal of either party to appear. Each party is a complainant, either may proceed. The jurisdiction of the court in this cause is fully shown.

The remaining question is whether the defendant has, under the cross-bill, shown a willful, continued and obstinate desertion by the husband for the period of two years.

It is impossible to have heard the testimony in this cause without being satisfied that for more than five years there has been no affection between these parties. Their married life, when they lived together, was jotted with quarrels and abuse by the husband of the wife, both of word and actual physical violence. The particular incident of their separation, when the desertion began, was in the year 1895, when in a quarrel he pushed her down cellar, broke in a door and was so violent that he greatly frightened her, so that she called out of the front window and brought in the neighbors and also a policeman. The violence is proved only by the testimony of the wife, but the neighbors who came in on the outcry, saw the broken door, the confusion in the house and the terrified condition of the wife, and all tell the same story. When they appeared and the policeman was mentioned, Mr. Abele was there, and he evidently had such consciousness as to the occasion for the presence of a policeman, that he was unwilling to stay. He said to the neighbors, speaking of his wife: "You know I would not hurt her." But he had not enough faith in his own declaration to remain until the policeman arrived, so he disappeared by going out the back way. He has never lived with his wife since.

He knew that if he did not do something to support her and her child he would be liable to be arrested. At various times he made contributions for that purpose, some voluntary, and some after legal steps against him were taken or threatened. None of these payments, as far as I can gather from the evidence, appears to have been made willingly. Nor do I think the testimony leaves any doubt that they were made under a sense of compulsion, and not because he desired to support his wife and child, or because he had a sense that the obligation of the marriage tie put that duty upon him. Support, even if bountiful, is not the only marital duty which a husband owes to a wife. Non-support is not desertion. Neither is support alone a full performance of the marriage obligation.

It is impossible to hear this testimony without being satisfied that Mr. Abele willfully and of his own mind, without compulsion, left the company of his wife and broke up their connubial relation. All the testimony shows that he never came to live

with her again and never desired to do so. The neighbors and Mrs. Abele's mother, who lived with her every winter since, all prove this. The remittances of money which Mr. Abele made were not brought personally to the wife, but they were sent to her by check. In all his conduct Mr. Abele seems to have done everything to avoid personal association with his wife. His separation from her has been willful, and has continued for more than four years. It has also been obstinate with a determination to abandon her. The testimony shows that though often asked to return he has refused to come back and live with her. He even told her to get a divorce.

The only incident which suggests any break in the continuity and obstinacy of the desertion is the declaration from Mrs. Abele that Mr. Abele did once say to her that he would offer her a home. Immediately that the offer was made she inquired where, and he told her that it was in the house where he lived, and that he had a housekeeper there. There was an immediate dispute, in which Mrs. Abele made known to Mr. Abele that she believed that his relations to his housekeeper were such that his wife should not be expected to come into his house while the housekeeper remained there. The evidence in this case shows that Mr. Abele was not so well placed in life that he was justified in maintaining a housekeeper in the house where his wife was to reside. His wife had always been his housekeeper when they formerly resided together. The good faith of his offer may readily be tested by his conduct when it was brought to his knowledge that his wife believed that the housekeeper woman was in Mr. Abele's house in a wrongful position. He did not offer to arrange with the wife about the matter or to explain that she was mistaken. He did not even consider his wife's statement, but merely said, in effect, that if she came to his house for a home she must live in a place where, rightfully or wrongfully, she believed another woman was occupying the place of her husband's mistress. Naturally Mrs. Abele said she would not go there. It is a fair inference to believe that the husband did not expect her to go to his house under such circumstances.

The invitation by the husband to a wife whom he has wronged to come to his house is not one which depends upon a form of

Abele *v.* Abele.

words. In this case the evidence shows that the act of separation was Mr. Abele's act. He abused his wife and left their home. He came into this state, established a separate home for himself, and took for his housekeeper a woman who his wife believed was his mistress. He then, after several years, and while legal proceedings were continually threatened to compel support, invited his wife to his new home where his housekeeper was, and where he told his wife she was to stay. It is quite plain that when the wife indicated that she had doubts about this woman with whom her husband was living, if he had any sincere desire to have the wife come back, he would have proposed some explanation or some arrangement. But he did not propose any. He evidently did not care for her return. That is not the attitude which a husband should take who had abused his wife, and so frightened her that she had to call in the neighbors, and whose bed and board he had for years forsaken.

The obstinacy of the desertion has not been overcome. The testimony justifies a decree for divorce, in favor of the wife, because of willful, continued and obstinate desertion on the part of the husband, which appears to have existed for some five or six years preceding this suit.

There is another element. There is a child, Helen Abele, some ten or eleven years of age, who has been under the care of the mother since the desertion by the father. No provision has been made for the child's support by the father, except the contribution of $5 per week which he has made at various times, but with intermissions. The wife appears to be a woman of middle age and in good health. There is no affection between these parties. They have lived apart for years, the wife, in great part, supporting herself. She is quite young enough to expect to be married again, and no special reason is shown which calls for a decree allowing permanent alimony.

The maintenance of the child of the marriage stands on a very different footing. That duty belongs to the father, and, under the twenty-third section of the Divorce act, should be enforced by the decree in this suit. There should be an allowance for the maintenance of the child by the father until the further order

of the court. If counsel want to be heard as to amount I will hear them now.

Mr. Rex—Would your honor make a decree that the father should have the child and educate and support it?

The Vice-Chancellor—I would not, because he has, for some six years or more, been satisfied to live without association with the child. Nothing in the evidence even suggests that he has any more affection for the child than for the wife. The character of the wife stands unimpugned. The child is a girl and has been in her mother's charge ever since she was born. It is altogether fitting that the mother should have the custody and care of her. Of course, the father has a right of access and visitation. I will take care of that.

Mr. Rex—I suggest $3 per week for the child's support.

Mr. Stockwell—I think she ought to have at least $5 per week.

Argument was then submitted by counsel on the point.

The Vice-Chancellor—It is quite evident that the mother has heretofore consented to the acceptance of $5 per week as a contribution from the husband for the support of both herself and her child. The child, being eleven years of age, is approaching a period of time when she will need education, and probably be at greater expense for clothes. The father ought to be cordially willing to furnish to the child all that is necessary for her support and education, and he seems to be fairly able to do so. The amount here allowed is not final. Four dollars per week is presently no more than he ought to contribute to maintain his child. I will advise an order that he pay $4 per week until the further order of the court. The order should contain a clause that the father shall have the privilege of access and visitation to the child, on such terms as counsel may agree. If counsel are unable to agree, the court will formulate such an order.

Mr. Stockwell—There should be some provision for counsel fee.

The Court—I will allow $15 additional fee, with the costs of the suit.