In 1917 a decree was entered in this cause, divorcing the petitioner from her husband. At that time a so-called "consent order" was made, whereby the defendant was directed to pay the sum of $720 annually for the support and maintenance of the petitioner and the child of her marriage with the defendant, who was then a little girl of five years. It would appear that both of the parties were members of well-to-do families at the time of their marriage and also at the time of their divorce; but the petitioner has since been obliged to secure employment so as to eke out an existence for herself and her daughter who to-day is a well-grown girl of fifteen. Recently, the petitioner's health has become such that she is not able to continue her own exertions. *Page 112 
The defendant presents every indication of a well-educated, intelligent man. He has been a member of a firm of stock brokers which, he says, has utterly failed, and he is now attempting to pursue a similar business in which he has not scored any brilliant success. He is a beneficiary under the will of his great-grandfather, who died in 1884, by succeeding to the right of his mother at her death. If the defendant outlives someone else he will become entitled to, I think, one-ninth of a very substantial estate worth almost $1,500,000. At present, he receives about $6,600 annually in income from his estate. He attempts to discount this item, however, by saying that he has made assignments of almost $85,000 to various individuals to secure debts contracted by the firm mentioned above. It is not without interest to observe that he seems to have undertaken to secure these creditors of the firm although his father was equally liable.
As observed by petitioner's counsel, these assignments are all to individuals bearing such relation to the defendant as to cause them to be of some significance. One assignment is in favor of the wife of the New York counsel who appeared for the defendant in this very motion. Another is an old friend of the defendant's father. The third is to one of the defendant's aunts; and the last assignment runs in favor of the present wife of the defendant, and was made after the order to show cause was allowed; that is the foundation of this motion.
While the petitioner and the defendant's daughter by his first marriage are living upon a pittance paid by him largely upon the bounty of others, he is residing in apparent affluence with his second wife and two children that have been born to them. Both of these children are attending private schools and living with their parents in an expensive apartment in Brooklyn. It is true that he has testified that they will be obliged to abandon the apartment and the children will be removed from their private school after this year, and one of their two servants either has been dispensed with or will presently be discharged, in the interest of economy. But the fact remains that this man admits a scale of living that I think it is fair to assume would require an annual *Page 113 
expenditure of at least $25,000 a year. I am sick and tired of listening to parties explain why their condition to-day is so infinitely worse than it was yesterday, in cases like this, where the misfortune, to which this man attributes his alleged straitened circumstances, are of several years' standing.
It appears to be a condition attached to all of the assignments against the defendant's interest in his great-grandfather's estate that he shall keep his life insured to the extent of $45,000 and pay the premiums. He is also obliged to pay interest on the moneys secured by the assignments, and thus, he says, his income of $6,600 from the estate is reduced, as I recall his testimony, to about $3,000 annually. He also admits that he was able to earn last year about $2,500. Not only does it seem ridiculous to me that a man of the defendant's apparent ability and position in society should only be able to earn so small a sum by his exertions, but it is significantly pointed out in the brief filed for the petitioner that on this miserable income the defendant was able last year to live in the manner just outlined and to enjoy a trip to Europe with his family.
Briefly, we have a picture of a man in the very prime of life, residing with his second wife in an apartment for which he pays rent at the rate of $2,800 a year; in the summer occupying an expensive establishment at one of the resorts on Long Island; with his family requiring the assistance of two servants in his household; sending his children to a private institution; traveling abroad with his family, and only paying to his first wife, who has proved him guilty of some matrimonial offense, and a daughter who will soon become a young lady, the sum of $62.50 a month. He has not explained to my satisfaction why he is making so little, or, in fact, that he is not making a great deal more. And, on the strength of his own admission, he is not paying for the support of his wife and daughter who is his own flesh and blood a fair proportion of what he is willing to admit comes into his hands each year. Nor should a man be allowed to escape a just contribution to those the law declares he must support, by saying, as this man says, to all intents *Page 114 
and purposes, that he is unable to earn anything. To permit this man to deal with his wife and child on the assumption that he is only able to earn $2,500 a year would be similar to permitting another man of less intelligence, education, refinement and experience to say that he was not able to earn more than four or five dollars a week. And if that were to be allowed, the legislature might just as well repeal the twenty-fifth section of the Divorce act.
I think, as nearly as it is possible for anyone to assess the amount which the defendant should pay for the care and maintenance of his first wife and oldest daughter, would be to assume that, at the very least, he could secure a position that would pay him $6,000 per year. If there then be added to that the amount he receives from the estate of his great-grandfather, over and above the expenses entailed upon him by his assignments, he would have an annual income of $9,000 a year. Out of that he should pay for the support and maintenance of his first wife $3,000, and for his daughter by that wife $1,000. I wish that I could assume the reasoning the petitioner's counsel urges upon me and make an allowance based upon a belief that the defendant is in the annual receipt of approximately $25,000; but this I cannot safely do. It is very probable that he has married a woman of some financial means and that she is assisting him in meeting the family expenses, and that if that is true, it would then be most unjust to enter an order that would be beyond the realm of possibility for him to obey.
Nothing is decided as to the validity of the above-mentioned assignments, for the reason so clearly expressed by counsel for the defendant. My suspicions do not amount to that belief, which should always be the basis of judgment.
Under all the circumstances I think that an allowance of $1,500 should be made counsel. *Page 115