38 N.J. Super. 92 (1955)
118 A.2d 49
JACQUELINE M. MOWERY, PLAINTIFF-RESPONDENT,
v.
HOWARD M. MOWERY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1955.
Decided November 10, 1955.
*94 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Norman J. Currie argued the cause for appellant (Mr. Edward W. Currie, of counsel).
*95 Mr. Henry H. Patterson argued the cause for respondent (Messrs. Patterson & Cooper, attorneys; Mr. David M. Pindar, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This appeal challenges as excessive the provisions of the judgment nisi entered in favor of plaintiff wife in the Chancery Division, awarding $10 a week for the support of each of the two children of the marriage in her custody, directing that defendant also pay her the sum of $5.00 a week in reduction of the arrears in support payments fixed by a previous order, and further ordering him to pay plaintiff's attorneys a $300 counsel fee.
On May 15, 1954 plaintiff brought an action for divorce against defendant on the ground of adultery. He filed an answer by way of general denial and counterclaimed for divorce on all three grounds permitted under the statute: desertion, adultery (illicit acts with five different corespondents on various dates were alleged), and extreme cruelty. Plaintiff promptly denied the charges. She subsequently filed a notice of motion, with affidavits, seeking custody of the two children  a daughter of 14 and a son of 12  pending the litigation, and support for herself and the children pendente lite, together with counsel fees, suit money and costs. At this time the daughter was living with plaintiff, and the son with defendant. The application for custody of both children was based on the moral unfitness of defendant's home where his paramour was spending much of her time. Defendant opposed the application with his own and his daughter's affidavits, whereupon plaintiff in turn filed an affidavit meeting the charges contained in defendant's affidavit, and also an explanatory affidavit by her daughter. It was in this posture of the case, and after oral argument, that the Chancery Division entered the first of several interlocutory orders, dated September 7, 1954, awarding the custody of the daughter to plaintiff, directing defendant to pay $12 a week for her support pendente lite, ordering that in the event the parties agreed to the son also *96 being in plaintiff's custody the support was to be increased to $20 a week, and further ordering defendant to pay $100 counsel fee and costs. It will be noted that from this time on alimony for the wife disappears as a factor in the case.
Defendant made no effort to comply with the support order, and it was not until he was held in contempt on December 6, 1954 that he paid the $120 support money then in arrears and the $100 pendente lite counsel fee. The December 6 contempt order awarded custody of the son to plaintiff and fixed the support for the two children in her care at $20 a week. Available to the court at that time was a report of the Probation Department of Monmouth County stating that defendant's "girl friend" on occasions stayed overnight in his home located on his employer Bedle's farm, and that her daughter was living at the place.
Plaintiff was again obliged to bring contempt proceedings against her husband for failure to comply with the December 6, 1954 order. On March 25, 1955 the Chancery Division entered its order fixing support arrearages at $128, directing defendant to pay $5 each week in reduction of this sum and in addition $15 a week pending final hearing for the support of the two children in plaintiff's custody, and awarding plaintiff's attorneys a $35 counsel fee on the contempt application. At that time defendant by his affidavit represented that he had living expenses of $118 a month, and in addition had to pay $10 to $20 a month on account of loans made by his employer and by a friend.
Despite the variety of serious charges he had brought against his wife, defendant chose to withdraw his counterclaim prior to final hearing, which was held on April 12, 1955. Defendant appeared by his attorney, but did not himself take the stand or offer any witnesses. At the conclusion of the hearing the court found that plaintiff had fully supported the allegations of her complaint. After extended colloquy, in the course of which the trial court explored the several items of living expenses which defendant said he had to meet regularly, as well as his income and his claim that he could do nothing but farm labor, the judge stated *97 that he would allow $10 a week support money for each child, require defendant to pay $5 a week on the accumulated arrears, and allow plaintiff's attorneys a final counsel fee of $300. The judgment nisi granting plaintiff a divorce on the ground of adultery contains these provisions. This appeal followed.
It appears that plaintiff's attorneys moved to hold defendant in contempt for failure to comply with the terms of the judgment nisi as to counsel fees and support payments for the children. The trial court held defendant in contempt for failure to pay the fees and directed that a warrant issue. A stay was granted by a single judge of the Appellate Division until July 5, 1955, when the Appellate Division en banc granted a stay of the provisions of the judgment nisi relating to counsel fees only. Defendant through his attorney has since paid $50 of the counsel fee award.
The duty of parents to maintain, protect and educate their children was recognized at common law and was said to stem from the law of nature. Osborn v. Allen, 26 N.J.L. 388, 391-392 (Sup. Ct. 1857); 1 Bl. Comm. 447, citing Puffendorf's Laws of Nature, and Montesquieu. This benign principle of the natural law has been considered as something less than adequate and no more than the statement of a moral principle, and this for no less a reason than Blackstone's own declaration that "No person is bound to provide a maintenance for his issue, unless where the children are impotent and unable to work, either through infancy, disease, or accident; and then is only obliged to find them with necessaries, the penalty on refusal being no more than 20s. a month." 1 Bl. Comm. 449. See in this regard, Greenspan v. Slate, 12 N.J. 426, 430-431 (1953). Indeed, in Freeman v. Robinson, 38 N.J.L. 383, 384 (1876), our former Supreme Court flatly stated that the duty of a father to provide maintenance for his children is a "mere moral obligation. Except in cases within the statute of Elizabeth, and by the procedure there pointed out, he is not legally compellable to perform this duty." The court in that case did not, however, cite the equity view previously set out in *98 Tomkins v. Tomkins, 11 N.J. Eq. 512, 517-518 (Ch. 1858), which applied the prevailing American view as enunciated in Van Valkinburgh v. Watson, 13 Johns (N.Y.) 480, 7 Am. Dec. 395 (Sup. Ct. 1816), that a parent is bound to provide his infant child with necessaries, and if he neglects to do so, a third person may supply them and charge the parent with the amount. And see Alling v. Alling, 52 N.J. Eq. 92, 96, 108 (Ch. 1893); cf. In re Ganey, 93 N.J. Eq. 389 (Ch. 1922), affirmed o.b. 94 N.J. Eq. 502 (E. & A. 1923), and Cohen v. Cohen, 6 N.J. Super. 26 (App. Div. 1949), which relies on the Freeman and Ganey cases.
Freeman and Ganey were criticized in Greenspan v. Slate, where the Chief Justice, after analyzing the cases, concluded that:
"In equity, the parents' obligation to support and educate their children is much more than a principle of natural law; it is an obligation enforced wherever equity has jurisdiction on equitable principles in the light of the facts of the individual case. `The physical ability of the child to earn its bare food and clothing is not the test or gauge in this court of a parent's duty to support and educate it' * * * nor does the fact that the child has an estate of its own excuse the parent from all obligation to it. In determining the question of support the court will take into consideration both the parents' ability to pay and the child's fortune." (12 N.J., at page 435)
It was there pointed out that the common law rule with reference to the support of minor children can only be understood in light of the pertinent statutes. These are: R.S. 44:1-140, making the father and mother of a child not able to work responsible for its maintenance in such manner as the overseer of the poor or the court shall order; N.J.S.A. 44:4-104, providing that where a father or mother deserts a child the director of welfare may apply to the juvenile and domestic relations court for an order for suitable support and maintenance to be provided by the husband or wife, the court being authorized to compel defendant to give reasonable security and, by N.J.S.A. 44:4-105, to sequester defendant's property and appoint a *99 receiver; N.J.S.A. 30:4-60 and 66, making similar provisions for insane children, and R.S. 30:4-176 for the indigent feeble-minded; N.J.S. 2A:34-23 and 24, providing that in a matrimonial cause an aggrieved wife may obtain suitable support for herself and her children; and R.S. 9:2-1 et seq., as amended, providing for the custody and maintenance of children of divorced or separated parents. To these statutes imposing civil obligations may be added those imposing penalties and criminal sanctions: N.J.S.A. 44:4-108 and 44:1-147, designating a father or mother who willfully deserts a child, or fails or neglects to provide for it, a disorderly person subject to commitment for not exceeding 60 days; and N.J.S. 2A:100-1 and 2 (Uniform Desertion and Nonsupport Act), making such misconduct a misdemeanor. See Greenspan v. Slate, supra (12 N.J., at pages 437-438); Cohen v. Cohen, supra (6 N.J. Super., at page 30).
Whatever validity might have resided in statements made by our courts in the past that Chancery was without original jurisdiction to compel a parent to support his minor child and that statutory authorization was deemed essential to the exercise of such jurisdiction (see, for example, Meier v. Planer, 107 N.J. Eq. 398, 402 (Ch. 1930), In re Ganey, supra; but see Greenspan v. Slate, supra), the question is now academic in the light of the provisions of N.J.S. 2A:34-23 and 24 (formerly R.S. 2:50-37 and 39, as amended), which confer jurisdiction on the Chancery Division in suits for divorce, nullity, and for separate maintenance, to make an allowance for the minor children of the marriage. R.S. 9:2-1 et seq., as amended, may be considered as a complement to these statutes. Pieretti v. Pieretti, 13 N.J. Misc. 98, 103, 176 A. 589 (Ch. 1935). N.J.S. 2A:34-23 provides:
"Pending any matrimonial action brought in this state or elsewhere, or after judgment of divorce or maintenance, whether obtained in this state or elsewhere, the court may make such order as to the alimony or maintenance of the wife, and also as to the care, custody, education and maintenance of the children, or any of *100 them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders. * * *"
The court may make provision for the children of a marriage though it declines to award alimony to the wife or she asks no support for herself. Abele v. Abele, 62 N.J. Eq. 644, 649 (Ch. 1901); Rinker v. Rinker, 3 N.J. Super. 251 (Ch. Div. 1949), where it was also said that
"* * * The duty of the defendant [father] to support his offspring is not dependent on any matrimonial status. It is continuous, in any event, and wholly within his obligation. * * * Fatherhood is directly interdependent upon the duty to support and maintain. Children of parents engaged in marital dispute or dissolution must have the court to stand by them for in quite a direct sense, they are pawns and without capacity to care for themselves. * * *" (at pages 255-256)
That the father's duty is a continuous one and does not depend upon his prosperity, accord: Royce v. Royce, 124 N.J. Eq. 469 (E. & A. 1938); Marsh v. Scott, 2 N.J. Super. 240 (Ch. Div. 1949); Federbush v. Federbush, 5 N.J. Super. 107 (App. Div. 1949).
The amount that may be allowed for the support of children obviously cannot be determined with absolute precision. Factors that have been taken into consideration have been the age and earning capacity of the child and whether it is in the custody of the mother, Streitwolf v. Streitwolf, 58 N.J. Eq. 570, 576, 45 L.R.A. 842 (E. & A. 1899), and cf. Davis v. Davis, 5 N.J. Super. 59 (App. Div. 1949); the ability of the parent to pay and the estate of the child, (Greenspan v. Slate, 12 N.J. 426, 435 (1953); the father's financial resources, Goodrich v. Harrison, 9 N.J. Super. 382, 385 (Ch. Div. 1950); the mother's means, Pieretti v. Pieretti, 13 N.J. Misc. 98, 103, 176 A. 589 (Ch. 1935).
Defendant argues that the trial court committed error in awarding support for the children of the marriage in excess of his ability to pay. The court had before it defendant's *101 affidavit in the second contempt proceedings brought against him by plaintiff, and which he used in support of his application for revision of the existing support order. Therein defendant set out various expenses totalling $118 a month. The trial court found some of these estimates excessive, as do we. One of the expenses claimed was repayment of loans made by defendant's employer Bedle, and a friend. Defendant accompanied his affidavit with that of his employer; Bedle makes no mention of such a loan. No affidavit by the friend was offered.
Turning, now, to a consideration of defendant's income we find it cannot be calculated at only $34.60 per week net, as alleged in his affidavit. This is the amount actually earned as a farmhand on the "gentleman's farm" run by Bedle. But we must also consider that in addition to this sum defendant enjoys the use of a tenant farmhouse rent-free and, as plaintiff claims under oath  this is contradicted only by defendant's affidavit; his employer's affidavit is silent on the subject  he also obtains milk and vegetables from the farm. Defendant works for Bedle in his undertaking business as a driver, but allegedly receives no additional compensation for this work. There is also proof that he boards two horses and owns an automobile.
Plaintiff is gainfully employed and earns an average of $35 a week, net. Admittedly, she also receives $150 a month for the care and custody of her nephew, this sum being paid partially by the child's father who is presently in the army and the remainder by a government allotment. Defendant argues that so much of the $150 so paid for the care of the nephew, over and above the expense of his care and maintenance, constitutes earnings of the plaintiff and may be used for the support and maintenance of his children. The trial court did not agree, nor do we. There is no satisfactory proof as to how much, if any, of these monies plaintiff is entitled to retain for herself.
In fixing the sum of $10 support for each child and directing that defendant additionally pay $5 in reduction of arrears, the trial court fully considered not only the wages *102 received by defendant, but the living quarters and food he enjoyed, and his potential capacity to earn more. It also considered the $35 weekly income of the wife, which she uses not only for her own support, but in part for the support of her children, thereby discharging to the limit of her ability her correlative and equal parental duty.
The main contention made on defendant's behalf is that he is a man of limited education and has been a farmhand all his life. That may be so, but the court in fixing support has every right to consider defendant's potential earnings were he to look about for a more profitable job, or perhaps seek greater remuneration for the work he now does on Bedle's farm, as well as compensation for the extra duties he performs in connection with Bedle's funeral establishment. In determining what is a proper amount to be paid for the support of the children, we cannot indulge defendant his fancy that he is unable to do anything in this workaday world but farm labor. This court has every right to appraise realistically defendant's potential earning power. There is nothing to show that he is ill or disabled. He possesses manual strength and, we may reasonably infer, average skills. He can drive a car, and actually does drive Bedle's funeral cars. It is not too much to expect that he can readily find factory employment at a time when labor is in relatively short supply. He can obtain a driver's job. The choice of employment is his, but he cannot shirk his parental duty toward his children.
In connection with defendant's present complaint that he cannot afford to pay $20 a week support and $5 on arrears, we cannot ignore the fact that he managed to soften the asperities of life on a gentleman's farm by indulging himself with a paramour. He does not come before this court with good grace.
In treating of the matter of support, our courts have always looked beyond the father's claims of limited resources and economic opportunity. They have gone far to compel a parent to do what in equity and good conscience should be done for his children. In Close v. Close, 25 N.J. Eq. *103 434 (Ch. 1874), affirmed o.b. 27 N.J. Eq. 504 (E. & A. 1875), the court, in judging of defendant's ability to pay support, pointed to the fact that if he were to subdivide a large and valuable tract of land which was his largest asset, his income would then be adequate for a very liberal provision for himself, the complainant and his minor children. In Holmes v. Holmes, 29 N.J. Eq. 9 (Ch. 1878), the court found that defendant had purposely failed to pay mortgage interest so as to bring about a foreclosure of his valuable improved real estate and thereby obtain for himself net proceeds from the foreclosure sale of some $145,000, and this as a step toward avoiding his obligation to support his wife and children. The court directed that a receiver would be appointed unless defendant gave satisfactory security for the payment of taxes, mortgage interest, costs and execution fees in foreclosure, thus preserving the property and its income for support purposes.
The court in Andreas v. Andreas, 88 N.J. Eq. 130 (Ch. 1917), sustained the master in fixing support on the basis of defendant's reinvestment of his present bonds in safe securities giving a 5% return, and on the further basis of his large landholdings making a similar return  this despite defendant's representations that he could not sell the property or obtain any such income. The court quoted from the Close case:
"* * * The only difficulty I have had in fixing upon a sum of permanent alimony [i.e., support for the wife and children] grows out of the condition and character of his estate. But I am satisfied that the situation in which he has brought it, or designedly suffered it to be, cannot be allowed to defeat the manifest justice of the case, * * *"
Defendant in Farlee v. Farlee, 101 N.J. Eq. 111 (Ch. 1927), had chosen to continue in the brokerage business, with small success, after his firm had failed. The court there observed:
"* * * Nor should a man be allowed to escape a just contribution to those the law declares he must support, by saying, as this man says, to all intents and purposes, that he is unable to earn *104 anything. To permit this man to deal with his wife and child on the assumption that he is only able to earn $2,500 a year would be similar to permitting another man of less intelligence, education, refinement and experience to say that he was not able to earn more than four or five dollars a week. And if that were to be allowed, the legislature might just as well repeal the twenty-fifth section of the Divorce act." (101 N.J. Eq., at pages 113-114)
And see Krause v. Krause, 26 N.J. Super. 424, 427 (App. Div. 1953), where the court held that in considering a proper allowance for the support of the wife and daughter, it was not to be limited to what defendant said he was drawing from his bakery business, but "had the right also to consider his capacity to earn money from a proper and diligent attention to his business."
In our consideration of what sum may properly be fixed for the support of children of a marriage, we may properly look to those cases dealing with the amount of alimony to be paid a wife. The same general considerations apply. Both alimony and support derive from the same statute, N.J.S. 2A:34-23, which directs that the amount to be paid shall be such "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, * * *." Thus, in Robins v. Robins, 106 N.J. Eq. 198, 200 (E. & A. 1930), the court said that in determining what alimony was to be awarded, it could take into consideration not only the husband's property and income, but also his capacity to earn money from personal attention to business. "If it were otherwise, a husband, by deliberate intent or disinclination to work, might defeat or avoid his marital obligation of support." The husband in Bonanno v. Bonanno, 4 N.J. 268 (1950), was not employed and was receiving unemployment compensation; the wife was working. The court there said that the amount to be fixed as alimony was largely a matter of judicial discretion. No two cases were alike. It quoted the familiar rule of Dietrick v. Dietrick, 88 N.J. Eq. 560, 561 (E. & A. 1917):
"* * * The amount is not fixed solely with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the *105 husband's actual means. There should be taken into account the physical condition and social position of the parties, the husband's property and income (including what he could derive from personal attention to business), and also the separate property and income of the wife. Considering all these, and any other factors bearing upon the question, the sum is to be fixed at what the wife would have the right to expect as support, if living with her husband."
The court stressed the well-settled rule that while the husband's current income is the primary fund looked to, nevertheless his property and capital assets, "his capacity to earn the support awarded by diligent attention to business  his earning capacity or prospective earnings"  are all proper elements for the court's consideration in fixing the amount of the award. (4 N.J., at page 275)
See also Hires v. Hires, 91 N.J. Eq. 366, 371 (Ch. 1920), where the court, in passing on the amount of alimony to be allowed the wife, said that it saw "no reason why defendant's ability to augment his income by personal efforts should not be taken into account merely because he prefers to live a life of idleness." See, further, Hess v. Hess, 134 N.J. Eq. 360 (E. & A. 1944); our recent comprehensive treatment of the subject in Turi v. Turi, 34 N.J. Super. 313 (App. Div. 1955); and Fairbank v. Fairbank, 169 Md. 212, 181 A. 233 (Ct. App. 1935), where the court said that defendant should either attempt to get another position or induce his father, for whom he was working, to pay him something for his services.
We conclude that the provisions of the judgment nisi relating to support for the children and the additional payment in reduction of arrears was fair and reasonable in the circumstances.
As for the counsel fee award of $300, there can be no question but that plaintiff's attorney fully earned that sum. However, in view of defendant's present limited income, his own needs, and the support payments he is required to make under the judgment nisi, the fee will be reduced to $200. This, in addition to the $100 counsel fee pendente lite and the $35 allowed on the contempt proceedings, will bring counsel's compensation to $325.
*106 As modified, the judgment nisi is affirmed. Defendant will pay plaintiff's attorney a counsel fee of $100 on appeal; he will also pay one-half of plaintiff's printing costs.