DOROTHY D. DRAPER and DOROTHY D. DRAPER, next friend of THOMAS E. BARNARD, WIILIAM P. BARNARD and JAMES D. BARNARD,

Plaintiffs,

*vs.*

REMSEN C. BARNARD, III,<br>Defendant.

*Sussex, October 24, 1960.*

 *C. W. Berl, Jr.,* of Berl, Potter & Anderson, Wilmington, for plaintiffs.

 *Robert W. Tunnell,* of Tunnell & Raysor, Georgetown, for defendant.

 MARVEL, Vice Chancellor: This action is brought by the mother of three minor children against her former husband and seeks an

order directing him to support and maintain such children. Plaintiff and defendant were divorced on February 15, 1958, having reached a prior agreement which provided *inter alia* for the mother's custody of the three children here involved. Plaintiff complains that since the date of such divorce defendant has failed to provide adequate support for the minor children in question and specifically seeks a decree directing defendant to pay her "* * * such sums of money each month for the support of said minor children as to this Court may seem reasonable and proper * * *" as well as a money judgment "* * * in a sum equal to the sums of money she has expended for the maintenance and support of the said three minor children. * * *"

Defendant denies that he has failed adequately to support his minor children for whom support and maintenance is sought, alleging that he is paying "* * * $180.00 per month for the support of the three children in cash, in addition to medical bills, dental bills and the cost of required clothing for the said children. * * *"

While the jurisdiction of the Court to entertain plaintiff's complaint was initially attacked, I am satisfied that the provisions of *Chapter* 11 of *Title* 10 *Del.C.* (a chapter establishing a Juvenile Court for Kent and Sussex Counties) fail to furnish an adequate remedy for a child seeking support, *Du Pont v. Family Court for New Castle County, Del.*, 153 *A.2d* 189, and compare *Cohen v. Markel, 35 Del.Ch.* 115, 111 *A.2d* 702. Accordingly, defendant's motion to dismiss is denied.

At common law the father had a duty to support his children, 39 *American Jurisprudence,* § 35, *"Parent and Child"; Wright v. Wright, supra* p. 360, 164 *A.2d* 317, and the Delaware law as to the paramount legal duty of the father, if he is living and able to support his children, is set forth in § 702 of *Title* 13 *Del.C.* This section also limits the duty to support children as follows: "Such duty to support shall not exceed the amount necessary to provide for the essential needs of the minor child, such as food, clothing, shelter, medical expenses and reasonable education."

The children for whose benefit the mother here sues live with her and their step-father in a home purchased by him in Rehoboth

Beach where the children attend a nearby public school. For two months in the summer and on three quarters of the week-ends during the balance of the year they visit their father, but their home both by agreement and in fact is clearly that of their mother and her present husband. However, no contention is made, and under the facts of this case apparently none could be made, that the father's duty to provide support and maintenance is affected by the fact that these children do not make their home with him.

Plaintiff's case was submitted for decision on the theory that she together with her present husband have set up a mode of living appropriate to the needs of the three Barnard children and that the approximate cost of meeting such children's housing and other requirements can be readily arrived at by calculating the children's share of the actual and estimated cost of maintaining the entire household. Except for occasional visits on the part of Mr. Draper's children by a first marriage and infrequent visits by his mother, the household consists of plaintiff, her husband, and the three Barnard children. Thus, according to plaintiff's theory, the children's proper share of the cost of a basic item such as food may be readily and fairly determined by multiplying the annual food bill for five persons by three fifths. This formula is applied to other elements of the expense of maintaining the children in the manner deemed appropriate by their mother and her husband, and the total expense of the entire support project is thereby found to cost between $7,000 and $8,000 per year.

Courts, of course, must when all else fails concern themselves with the care and feeding as well as the behaviour of infants, and it is clear that the support and maintenance aspects of the law of parent and child have developed over the years from a purely moral to a legal concept, *Wright v. Wright, supra; Cohen v. Markel, supra; Mowery v. Mowery,* 38 *N.J.Super.* 92, 118 *A.2d* 49, and 1 *Blackstone's Commentaries,* 447-449. As I read such law, the extent of a modern court's concern with the support and maintenance of an infant is that the child, in the language of the statute, not be allowed to go without his "essential needs." Such needs cannot, of course, be rigidly defined and will vary according to the parent's ability to pay and the child's physical and mental condition. Finally, a court should

never permit a support action, whether brought on behalf of a mother or her children, to be used for the purpose of harassing the father.

While plaintiff's support theory has a superficial plausibility, no precedent for the use of such a rigid mathematical formula has been cited, and I decline to use it. In my opinion such a method for determining support payments puts unwarranted control in the hands of the payee and her husband in that it virtually ignores the capabilities of the payor. Assuming but not deciding that the stepfather bears no responsibility towards his stepchildren (but see *Re Weber's Estate*, 168 *Misc.* 757, 6 *N.Y.S.2d* 417), I shall not adopt a formula for fixing support payments which could actually result in benefiting the stepfather.

Defendant for the years 1954 through 1958 reported to the proper authorities net income averaging approximately $6,350 per annum after payment of taxes. However, at the same time he was annually drawing out a like amount from his capital account in the partnership of Wharton and Barnard which he apparently spent on himself and his family. As a result of his father's death, however, and the subsequent adoption of a complicated tax avoidance plan designed to provide for the maintenance of his ill mother and at the same time effectuate a reorganization of the family partnership, plaintiff claims that defendant acquired a vested remainder in an estate of at least $186,000, consisting principally of real estate and the assets of the family partnership. Plaintiff claims that the immediate result of these family transactions has been to cause defendant presently to derive annual business income in excess of $35,000 and to receive other substantial personal emoluments which are written off as business expenses.

Defendant contends that notwithstanding a nine-month net business income in excess of $29,000 for 1959, the seasonal nature of the partnership business is such that $30,000 is a more accurate estimate of his annual partnership income,[1] that the total of annual

1. Income from other sources, namely dividends, is estimated at $186 per annum.

interest payments to his sister and on his indebtedness to his mother exceed $6,000, and that such obligations when added to his tax obligations, living expenses, the cost of a college education for his eldest son, and other fixed commitments, particularly a large item of almost $3,000 for life insurance premiums, leaves him with annual cash resources of approximately $2,750 to be applied for the benefit of his three youngest children. Defendant contends that in fact he is providing support in a sum in excess of this figure.

Plaintiff, although questioning the accuracy of defendant's estimate of the size of his business income, recognizes the existence of most of defendant's commitments. She urges, however, that the Court in effect require defendant to rearrange his affairs so as to improve his cash position and thus provide more generous current support for the minor children. Such rearrangements would basically involve the giving up or changing of insurance policies (the proceeds of which as they are now written will ultimately go towards benefiting the children) and selling allegedly non-income [2] producing real estate. These suggestions and others, if effected, would undoubtedly produce additional cash, however, as long as the essential needs of the minor children here involved are being met in a manner not incommensurate with defendant's means, and I am satisfied that they are in substantial measure, such drastic action is not now required. The children for whose benefit defendant is providing support are young, the youngest being seven or eight, and their welfare and education will be a matter of concern to the father for many years to come.

I conclude therefore that defendant's voluntary payments for his minor children's benefit are in ample measure meeting essential needs and are commensurate with the earning record of Wharton and Barnard and defendant's other obligations. Defendant will be directed to continue direct monthly maintenance payments to plaintiff in the amount of $180 per month during the months the children live with their mother and will be further ordered to pay all clothing expenses of such children up to $1,000 per annum, as well as all medical and

---

2. Defendant denies that such real estate is non-income producing.

dental expenses incurred on behalf of such children. Defendant will also be ordered to furnish each child adequate spending money.

If counsel cannot agree on appropriate amounts of current spending money for each child, the Court will, after a conference with counsel, fix such amounts.

Order on notice.